2002 OK 78

**In the Matter of the REINSTATEMENT OF James B. BLEVINS, Jr. to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.**

No. 4701.

Supreme Court of Oklahoma.

Oct. 7, 2002.

### ORDER OF REINSTATEMENT TO OKLAHOMA BAR ASSOCIATION AND ROLL OF ATTORNEYS

¶ 1 This case is before the Court pursuant to Rule 11 (Reinstatement), Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch.1, App.1–A (RGDP), for consideration of petitioner, James B. Blevins, Jr.'s, March 22, 2002 petition for reinstatement to membership in the Oklahoma Bar Association (OBA). This Court approved petitioner's resignation from the OBA in January 1997 after he submitted his affidavit of resignation in late 1996 at a time when a disciplinary proceeding

was pending against him with the OBA.[1] *Oklahoma Bar Ass'n v. Blevins*, 1997 OK 4, 934 P.2d 327. The driving force behind the resignation was his plea of no contest to a state felony charge of attempting to obtain money by false pretenses.

¶ 2 A hearing was held on the reinstatement petition in June 2002 before a Professional Responsibility Tribunal (PRT) trial panel. The matter of petitioner's request for reinstatement was investigated by the OBA through its Office of General Counsel and the OBA has no objection to this Court ordering petitioner's reinstatement. The PRT trial panel report filed in August 2002 recommends petitioner be reinstated. In September 2002 a joint brief of the OBA and petitioner was filed that, in essence, requests the petition for reinstatement be approved.

¶ 3 When this Court in the exercise of its exclusive jurisdiction considers a petition for reinstatement a *de novo* standard of review is applied. *Matter of Reinstatement of Gassaway*, 2002 OK 48, ¶ 3, 48 P.3d 805, 806. Recommendations of a PRT trial panel are merely advisory [*Matter of Reinstatement of Kamins*, 1988 OK 32, 752 P.2d 1125, 1129] and, although Rule 11.5 (Findings Prerequisite to Reinstatement) requires the PRT to make certain findings as to a petitioner's moral character, competency in the law and whether he/she engaged in any unauthorized law practice during a period of suspension, disbarment or resignation, the ultimate responsibility and decision-making authority as to whether reinstatement is warranted rests with this Court. *See Matter of Reinstatement of Smith*, 1994 OK 19, 871 P.2d 426, 427.

¶ 4 Moreover, an applicant for reinstatement in petitioner's situation bears the heavy burden of showing, by clear and convincing evidence, that reinstatement is warranted. *Matter of Reinstatement of Smith*, *supra*, 871 P.2d at 427–428. In regard to a reinstatement application, a petitioner that has resigned his membership in the OBA pending a bar disciplinary proceeding has the same burden as an individual that has been disbarred by this Court. *Matter of Reinstatement of Kamins*, *supra*, 752 P.2d at 1129. In such a proceeding the applicant is required to present stronger proof of qualifications than one seeking admission to the OBA for the first time. Rule 11.4 (Standard of Proof for Petitions for Reinstatement), RGDP. This Court has also delineated eight factors considered in determining fitness for reinstatement. *Matter of Reinstatement of Gassaway*, *supra*, 2002 OK 48, at ¶ 3, 48 P.3d at 806. They are: (1) applicant's present moral fitness, (2) demonstrated consciousness of the conduct's wrongfulness and the disrepute it has brought upon the legal profession, (3) the extent of rehabilitation, (4) the original misconduct's seriousness, (5) conduct after resignation, (6) time elapsed since the resignation, (7) applicant's character, maturity and experience when he resigned, and (8) present legal competence. *See id.* Upon *de novo* review, we conclude the record demonstrates that petitioner has, by clear and convincing evidence, satisfied all of the above-enunciated criteria for reinstatement.

¶ 5 Petitioner was admitted to practice law in Oklahoma in 1979 following graduation from the Oklahoma City University College of Law and his successful completion of the Oklahoma Bar Exam. He was a practicing attorney from that time until approximately November–December 1996 when he submitted his resignation. As above-noted, we approved his resignation in *Oklahoma Bar Ass'n v. Blevins*, *supra*. Also, as noted, the genesis of the resignation was his no contest plea to a felony charge of attempting to obtain money by false pretenses and the conduct he engaged in that culminated in that plea.

¶ 6 The record shows that the charge arose when petitioner, a contract attorney for the Oklahoma Indigent Defense System (OIDS) in Logan County, agreed to represent two Mexican citizens for $10,000.00 who had been charged with a drug trafficking offense, even though he had already been appointed to

---

1. Rule 11.1(e) of the Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch.1, App.1–A (RGDP), provides that an attorney that has resigned from membership in the Oklahoma Bar Association pending a disciplinary proceeding shall not be permitted to file an application for reinstatement within five (5) years of the effective date of the resignation.

represent them as indigents under his OIDS contract. Quite forthrightly, petitioner admitted the motivation behind his conduct was greed. The conduct occurred in the summer of 1995 and petitioner never actually received the $10,000.00. Petitioner pled no contest to the charge in late 1996 and upon his plea the judge handling the matter deferred judgment for two years and ordered petitioner to pay court costs, which he did.[2] The petitioner met all the conditions of the deferred judgment and, upon motion, the no contest plea was expunged and the criminal charge dismissed with prejudice in late December 1998.

¶ 7 Since his resignation petitioner has worked as an oil and gas landman, and for an abstract company. He purchased the abstract company on or about October 1, 1998 and that is currently his business. No adverse testimony or objections to his reinstatement are contained in the record submitted. The record also shows petitioner avoided doing anything after his resignation that would impede or negatively reflect upon his reinstatement application to the OBA. The record is further clear that he has kept up his competency in the law by reading the Oklahoma Bar Journal and taking over one hundred (100) hours of continuing legal education since his resignation. Of course, his work as an oil and gas landman and in the abstract business would have also provided some law-related experience. There is absolutely no indication in the record that he practiced law after he resigned.

¶ 8 Witnesses, both lay and legal (including a district court judge) vouched for his good character, his legal ability and his remorsefulness concerning his misconduct. The record also plainly shows that petitioner had no previous difficulties with the OBA and the conduct leading to the criminal charge against him was a one-time incident. Peti-

tioner's own testimony also reveals he realizes the wrongfulness of his conduct and the discredit it brought on, not only himself, but on the entire legal profession in Oklahoma.

¶ 9 Based on our review of this matter, petitioner has met all the prerequisites for reinstatement provided in Rule 11 of the RGDP and this record shows, by clear and convincing evidence, that reinstatement is warranted. It is, therefore, **ORDERED** that petitioner, James B. Blevins, Jr., be reinstated to membership in the Oklahoma Bar Association and that his name be placed on the Roll of Attorneys licensed to practice law in the State of Oklahoma.[3]

¶ 10 **DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THIS 7TH DAY OF OCTOBER, 2002.**

/s/ Rudolph Hargrave
CHIEF JUSTICE

¶ 11 ALL JUSTICES CONCUR.

---

2. Upon petitioner's waiver of venue the criminal case/charge was handled in Pontotoc County, rather than Logan County. One of petitioner's character witnesses at the Professional Responsibility Tribunal (PRT) trial panel hearing testified that the District Attorney's Office in Logan County had recused/disqualified from the criminal case. Said witness was an assistant DA in Logan County when the charges were processed through the judicial system.

3. We note that on September 26, 2002 the Oklahoma Bar Association (OBA) filed a document in this matter entitled receipt for costs which states that petitioner has made full payment of the costs ($758.30) incurred in this reinstatement proceeding. Rule 11.1(c) of the RGDP requires that an attorney seeking reinstatement pay the costs of investigating and processing (including the cost of any hearing transcript) the application for reinstatement.